# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

MARYANN MATHEWS,
KEVIN MATHEWS
     **Plaintiffs**

                                        C.A. No.:  **1:15-cv-00389-M-PAS**

WELLS FARGO BANK, N.A.,
ALIAS and JOHN DOE, ALIAS
And ORLANS MORAN, PLLC
     **Defendants**

## MEMORANDUM OF LAW

This matter is before the Court on Wells Fargo's Motion to Compel

Depositions of the Plaintiffs.  In addition Plaintiffs are filing a  Motion for a

Protective Order prohibiting the deposition of the Plaintiffs to the extent that

Defendant, Wells Fargo Bank, N.A. seeks to obtain discovery of Plaintiffs

regarding matters covered by the attorney client privilege.  The Defendant's

attorney sent a letter to the Plaintiffs' attorney on August 16, 2016, attached as

Exhibit A, in which he made it clear that the purpose behind the deposition of the

Plaintiffs was to obtain information covered by the attorney client privilege and the

work product privilege.  The Defendant essentially seeks to depose the Plaintiffs to

obtain the mental impressions and legal strategy of their attorney, which is clearly

privileged.  A review of the Complaint, the manner in which the Defendant

answered this complaint, its deposition notices for the Plaintiffs and their attorney and its August 16, 2016 letter demonstrate that the proposed depositions of the Plaintiffs is designed to ask them questions regarding their attorney's mental impressions and seek to obtain information protected by the attorney client privilege and the work product privilege. Thus this issue, which involves bad faith discovery of the Defendant, should be addressed prior to a deposition of the Plaintiffs being conducted. Otherwise, the attempted harassment of the Plaintiffs and their attorney will continue in this deposition.

## INTRODUCTION

This case was originally filed on May 5, 2016, in the Providence Superior Court,  when Plaintiffs filed a complaint with a Motion for a Temporary Restraining Order, seeking to restrain and enjoin Defendant, Wells Fargo Bank, N.A. ("Wells Fargo") from conducting a foreclosure sale of the Plaintiffs' home on June 8, 2015. The law firm of Orlans Moran ("Orlans") on April 17, 2015, claiming to be acting on behalf of Wells Fargo had scheduled a foreclosure sale for Plaintiffs' home on June 8, 2015 at 10:00 A.M. as indicated by Exhibit A in the complaint. This Notice was sent to Plaintiffs along with an addendum pursuant to the provisions of RIGL 34-27-4(d).     However, pursuant to RIGL 34-27-3.2, any foreclosure notice, commenced by a notice pursuant to RIGL 34-27-4(d), after October 6, 2014, which did not contain a Notice of Mediation, would be void. Plaintiffs had not received a notice of mediation pursuant to the provisions of

RIGL 34-27-3.2 from Wells Fargo or its attorney in conjunction with this attempted foreclosure. Orlans, on behalf of Wells Fargo had threatened to publish advertisements of a foreclosure sale of Plaintiffs' home in the Providence Journal and in fact had published such advertisements. The Plaintiffs alleged that they would be irreparably harmed if the foreclosure sale that was scheduled for June 8, 2015 at 10:00 AM by Orlans on behalf of Wells Fargo occurred and caused the sale of Plaintiffs' home.

On May 5, 2016, Justice Van Couyghen of the Rhode Island Superior Court, granted a Temporary Order restraining Wells Fargo or any other entity acting on its behalf is restrained and enjoined from taking any action to foreclose on the Plaintiffs' property located at 51-53 Outlook Avenue, East Providence, Rhode Island at any time until further Order of this Court. Subsequently On May 15, 2016, Justice Van Couyghen issued a written decision, which effectively granted a Preliminary Injunction in this case. In that decision, attached to this Memorandum of Law, he held that the mediation statute was not an ex post facto law, but merely provided that as a matter of exercising the statutory power of sale in Rhode Island, effective October 6, 2014, no Notice of Sale pursuant to R.I.G.L. 34-27-4 could be sent to a homeowner who lived in the home, without first sending out a notice of mediation, pursuant to R.I.G.L 34-27-3.2 prior to the foreclosure notice. This statute, which was not ignored by Wells Fargo and other mortgagees and loan servicer would render void any foreclosure commenced after October 6, 2014,

without such mediation notice having been sent to the homeowners.  This statute thus applied to the Plaintiffs and any foreclosure activity, including advertising, legal fees mailing costs and auctioneer fees should not have been legally charged to their mortgage loan account.

However, effective July 8, 2015, the Rhode Island General Assembly amended  the law and provided that mediation would be required for for a homeowner only if the date of default of the mortgage loan was May 16, 2013 or later.  Ironically this statute provided on its passage that a homeowner was entitled to mediation on July 8, 2015 if the loan had been declared in default at least two years and fifty days at the time the legislation passed. Due to the passage of time, this temporal standard has changed to three years and one hundred twenty days as of this date.

Wells Fargo filed a Motion to Dismiss the Plaintiffs' complaint on July 9, 2015 on the grounds that the statute had been amended and that mediation was no longer required.  The Plaintiffs had alleged damages as a result of the improper conduct of Wells Fargo in ignoring the mediation statute which was clear on its face and that Justice Van Couyghen had granted 18 restraining Orders in similar cases prior to May 5, 2016 on the mediation issue, including cases involving Wells Fargo.  Plaintiffs alleged that they incurred actual damages as the result of the conduct of the Defendant in not complying with the provisions of RIGL 34-27-3.2. Plaintiffs' mortgage loan account had been charged legal fees and expenses for

postage and advertising for a foreclosure sale without providing for mediation as required. They had incurred legal fees and expenses due to the conduct of the Defendant in not complying with the provisions of RIGL 34-27-3.2.

The Plaintiffs did file an amended complaint which replaced the original complaint on September 2, 2015, after which Orlans removed the case to this Court on September 5, 2015. This amended complaint consisted of five counts. The first count of the Plaintiffs seeks relief arising from the provisions of  the  Fair Debt Collection Practices Act, 15 U.S.C. § 1692(k). Since pursuant to RIGL 34-27-3.2, any foreclosure notice, commenced by a notice pursuant to RIGL 34-27-4(d), after October 6, 2014, which does not contain a Notice of Mediation, would be void. This amended complaint alleges that Wells Fargo violated 15 U.S.C. 1692e by use false deceptive or misleading representations or means in connection with the collection of any debt. It alleges violations of subsection (2) on various occasions by making false representations regarding the amount of the debt owed by the Plaintiffs on various  occasions. It also alleged that Wells Fargo and Orlans by threatening to foreclose on Plaintiffs' property violated 15 USC 1692(e)5 by making a threat to take an action that could not be legally taken. They could not send a Notice of Sale scheduling a foreclosure sale without providing mediation. It also alleged that, in violation of the FDCPA, representatives of Wells Fargo contacted the Plaintiffs on the following occasions in order to collect a debt, since September 1, 2014 despite knowing that they were represented by an attorney

during this time. These contacts in the form of letters were each violations of the provisions of   15 U.S.C. §1692(b)(6).These contacts occurred in the form of letters sent to the Plaintiff by Wells Fargo  and its attorney on various dates.


Another FDCPA claim pleaded in Count I of the amended complaint was that Wells Fargo and Orlans Moran  threatened to commence a non- judicial foreclosure to effect dispossession of the Plaintiffs of their property even though pursuant to RIGL 34-27-3.2, Wells Fargo lacked the present right to possession of the property claimed as collateral through an enforceable security interest. This related to the action seeking to foreclose without a mediation notice, which operated as a complete bar to any foreclosure activity without mediation.

Thus the claims arising from Count I of the amended complaint are all based on the undisputed facts that no mediation notice was sent to the Plaintiffs and that despite this, a foreclosure was commenced, incurring costs and legal fees. Justice Van Cuyghen's Orders were never appealed and in fact the title industry in Rhode Island recognized the void nature of such foreclosures and required servicers such as Wells Fargo to re-foreclose if mediation had not provided to homeowners prior to sending a Notice of Sale.

Count II of the amended complaint is an action for damages brought by the Plaintiffs, who are consumers,  for Wells Fargo's violations of the Truth in Lending Act, 15 U.S.C. §l601 et seq. ("TILA"). Specifically, Plaintiffs seek the

remedies provided in TILA for Defendants' failure to send the Plaintiffs monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively. Plaintiffs allege that they have not been sent a monthly statement in compliance with 12 C.F.R. 1026.41 since September 1, 2014. They have alleged noncompliance by not sending monthly statements as required by TILA and Regulation Z and by sending monthly statements containing inaccurate statements relating to principal, interest, escrow and fees charged to the mortgage loan account.

The third count of this complaint is based on the provisions of the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. 2605 et seq.,which grants this Court jurisdiction and grants the  Plaintiff the right to a private right of action for violations of RESPA and Regulation X.   Plaintiffs have alleged several specific violations of RESPA in their complaint, alleging that Wells Fargo has failed to respond to Notices of Error and Requests for Information followed by Notices of Error.  Plaintiffs have alleged a pattern and practice on the part of Wells Fargo Bank, N.A. in its failure to respond to these requests for information and notices of error.     There is no real dispute as to whether the Requests for Information and Notices of Error were in fact sent and received and the dates that they were received.   The Defendant in its answer did not dispute the mailing and receipt of the Notices of Error and the Requests for Information. It merely provided nonresponsive answers which did not deny the allegations. For example

when the Plaintiff alleged the following as to the Requests for Information, the answers of the Defendant essentially refused to answer.  Wells Fargo answered each allegation relating to sending and receiving requests for information and notices of error in the same manner. Thus none of the allegations of notice and receipt of these documents was denied.  Exhibits B-P of Plaintiffs' amended complaint include the certified mail receipts and each Request for Information and Notice of Error, which has been pleaded in this case to date.

The current amended complaint alleged several violations of Regulation X. Six  Requests for Information and Eight Notices of Error were sent to the Defendant. These Requests were attached to the complaint. Wells Fargo, in its answer used the same template answers to the respective allegations of the complaint.  As to any allegations that a Request for Information or a Notice of Error was transmitted to Wells Fargo, it answered:

The allegations of paragraph     are legal conclusions to which no response is required.  To the extent that a response is required, Wells Fargo states that the referenced law and documents speak for themselves.  Wells Fargo denies any and all allegations inconsistent therewith.

As to any allegations as to the transmission by certified mail, it answered:

The allegations of paragraph     are legal conclusions to which no response is required.  To the extent that a response is required, Wells Fargo states that the referenced law and the document speak for themselves.  Wells Fargo denies any and all allegations inconsistent therewith.

As to any allegations of the receipt of the Requests for Information and Notices of Error were received on a particular date, it answered:

Wells Fargo states that the document speaks for itself.  Wells Fargo denies any and all allegations inconsistent therewith.

Thus the current state of the pleadings is that Wells Fargo will not admit or deny allegations as to the existence, mailing or receipt of Requests for Information which were transmitted to it by certified mail return receipt.  The receipt of these documents is not disputed due to the certified mail. Wells Fargo possesses all the documents requested, which are reflected in the pleadings. It knows when it received these documents, what each document consisted of as well as its response to each document. since it possesses these documents.

Wells Fargo, on August 4, 2016, sent a Notice of Deposition to the Plaintiffs' attorney, which sought to depose Plaintiffs' attorney in this case.  A copy of this Notice of Deposition is attached as Exhibit  B.  Wells Fargo, On August 4, 2016, sent an unserved witness subpoena , attached as Exhibit C, to the Plaintiffs' attorney, which would compel Plaintiff to appear on August 24, 2016 to testify in a case in which he is the attorney of record.  This Notice of Deposition of the Plaintiffs' attorney is an abuse of the legal process and is completely unwarranted in law or fact.  It has also has noticed the depositions of the Plaintiffs as indicated in the attached  Exhibit D and E.  The Plaintiffs do not object to this deposition per se.  Rather it appears that the sole purpose of the depositions are to obtain work product and information regarding their attorney's communications

with them. This harassment by Wells Fargo, by these deposition Notices and threat to serve a subpoena,  is also prohibited by established Federal Court precedent in this District Court, the First Circuit and throughout the other Federal Circuits.

Depositions of opposing counsel are strongly disfavored by federal courts. While the Federal Rules of Civil Procedure do not explicitly prohibit the deposition of an opposing party's attorney, *Shelton v. American Motors Corp*., 805 F.2d 1323, 1327 (8th Cir. 1986), "the procurement of trial testimony from opposing counsel is generally disfavored." *Bogosian v. Woloohojian Realty Corp*., 323 F.3d 55, 66 (2d Cir. 2003).  Judge Smith of this Court in *Emhart Industries, Inc. v. New England Container Company, Inc*. (D.R.I., 2013)  granted a Motion for a Protective Order in a case in which a deposition of an attorney was  noticed.

The court held that while Rule 30 of the Federal Rules of Civil Procedure permits a party to "depose any person, the practice of deposing opposing counsel has been described as "a negative development in the area of litigation, and one that should be employed only in limited circumstances." Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).  The Court noted that District Courts within the First Circuit have employed the test developed in Bogosian v. Woloohojian Realty Corp., 323 F.3d 55 (1st Cir. 2003), to address the depositions of counsel. . This test examines "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) [whether] there are other viable means to obtain the

same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." Bogosian, 323 F.3d at 66.

Other Courts have noted that deposing an opponent's attorney is a "drastic measure" and "infrequently proper." *Dunkin' Donuts, Inc. v. Mandorico, Inc*., 181 F.R.D. 208, 209 (D.P.R. 1998) (citing *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992), and *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).    In *Shelton*, 805 F.2d at 1327, cited favorably by the Second Circuit in *United States v. Yonkers*, the Eighth Circuit noted that the proliferation of attorney depositions is a negative development in the area of litigation and should be permitted only in limited circumstances. As that court explained, "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and cost of litigation," and "the practice of deposing opposing counsel detracts from the quality of client representation." Id. "Federal courts have held that deposing opposing counsel 'inherently constitutes an invitation to harass the attorney and parties, and to disrupt or delay the case.'" *Dunkin' Donuts*, 181 F.R.D. at 210 (quoting *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D. Fla. 1990)).    Wells Fargo cannot meet its burden of showing that Plaintiff's attorney has relevant non-privileged information crucial, which Wells Fargo cannot obtain in other ways.    Wells Fargo however in its letter of August 16, 2016,  sent to  the Plaintiffs' attorney,

demonstrated that the actual intent of the deposition is to obtain the reason behind

why Requests for information and Notices of Error were sought. It stated that the

purpose of the proposed deposition of counsel is to:

discover information related to the letters that you sent, authenticate the letters,
identify what letters you sent, identify when you sent them, find out whether
responses were received by you, what you did with the responses, why you
continued to send the same requests over and over again and to figure out why the
information that you requested was necessary and relevant and not redundant. (or
otherwise excusing response under the applicable regulations.)

Wells Fargo indicated that it would take the depositions of the Plaintiffs first to

determine why Requests for Information were sought and then to seek the

deposition of the Plaintiffs' attorney, if it could not obtain such privileged

information from the Plaintiffs. Thus any deposition is designed to obtain solely

this privileged information relating to the reason why Requests for Information and

Notices of Error were sent to Wells Fargo. This letter indicates that a purpose of

this discovery is solely to obtain information protected by the work product

privilege and the attorney client privilege.

Wells Fargo seeks to inquire why certain RESPA requests were sent.  These

are matters relating to the mental impressions of the attorney and his analysis of

the case. In this case, the only factual issues relating to the RESPA count, are as

follows:

1.      Were Requests for Information and Notices of Error transmitted to Wells

Fargo at its designated address for Requests for Information and Notices of Error?

2.      When were those documents received by Wells Fargo?

3.      Did Wells Fargo acknowledge those requests for information within five

business days as required by RESPA and/or respond within the time limits set by

RESPA?

4.      Was the response of Wells Fargo timely and consistent with the RESPA

requirements.

5.      If a Notice of Error was sent to Wells Fargo, did it correct the error?

6.      Was a Notice of Error responded to by Wells Fargo and if not was it a matter

which RESPA mandated that a response was required.

6.      What are the Plaintiffs' damages?

7.      Was the conduct of Wells Fargo consistent with its usual pattern and

practice.

The Defendant seeks to depose the Plaintiffs as to WHY certain Requests for

Information were sent to the Defendant and why they were sent to the designated

to address set by Wells Fargo for RESPA Requests. This information is completely

privileged and is not subject to discovery.  The Defendant can argue the relevancy

of the RESPA requests before the Court. Any discovery of the Plaintiffs in regard
to the topics mentioned in the Defendant's August 16, 2016 letter are clearly
privileged and seek only the mental impressions of the Plaintiffs' attorney as to the
reason for the RESPA requests.  RESPA permits borrowers to send loan servicers
Requests for Information and to send Notices of Error when the servicer does not
respond to the Requests for Information or Notices of Error, or when such
Requests or Notices are not acknowledged.  Any inquiry as to the reasons behind
these notices goes to the mental impression of the Plaintiffs' attorney and is subject
to the work product privilege.  The August 16, 2016 letter clearly indicates the bad
faith of the Defendant in the discovery process.  The following language makes
this clear:

There is no basis for the discovery of "information related to the letters that you
sent" by deposing the Plaintiffs on that topic.  It clearly seeks privileged
information.

The deposition of the Plaintiffs to" authenticate letters" sent to Wells Fargo has no
basis, since Wells Fargo has those letters. The deposition of the Plaintiffs to
"identify what letters you sent"  and "identify when you sent them" and "identify
when you sent them" also has no basis, since Wells Fargo has those letter  in its
possession.  The inquiry into find out "whether responses were received by you "
also has no basis since Wells Fargo sent the letters to the Plaintiffs either directly

or to their attorney's office. Had it not disingenuously failed to answer the specific allegations of the amended complaint, such questions would have been admitted in the pleadings.

The issue of " what you did with the responses" and " why you continued to send the same requests over and over again and to figure out why the information that you requested was necessary and relevant and not redundant. (or otherwise excusing response under the applicable regulations.)" blatantly intrudes on the attorney client privilege and the work product privilege.  Wells Fargo actually suggests that it will ask the Plaintiffs why information was relevant and necessary, which are legal questions to be decided by the Court and clearly relate to the mental impressions of the Attorney for the Plaintiffs.

Count IV of the Complaint alleges that Wells Fargo violated TILA by refusing to identify the owner of the mortgage loan after a request was made to it by mail.  The allegations of Count IV complaint and Wells Fargo's answer relating to this specific claim was as follows:

199. On or about November 15, 2014 Plaintiffs, by their attorney, mailed a letter to Wells Fargo requesting the name of the owner of the Mortgage Note and clearly alerting Defendant to the fact that their request was being made pursuant to TILA, U.S.C. §15 1641.

Answer 199. The allegations of paragraph 199 are legal conclusions to which no response is required.  To the extent that a response is required, Wells Fargo states that the referenced law and the document speak for themselves.  Wells Fargo denies any and all allegations inconsistent therewith.

200. A copy of Plaintiffs request, the original of which Plaintiffs' attorney signed and mailed, is attached hereto as Exhibit L along with Postal Form 3811, the certified receipt form attached as Exhibit L, which indicates that Defendant received this letter on November 21, 2014.

Answer 200. Wells Fargo states that the document speaks for itself. Wells Fargo denies any and all allegations inconsistent therewith. Wells Fargo denies any and all allegations inconsistent therewith.

201. The Request was mailed by certified mail, return receipt requested, having an article number 7014 2120 0000 7201 4706. The Request was mailed to the address noticed by the Defendant on its website as the designated address for requesting such information as provided for by 12 CFR Section 1024.36(b).

Answer 201. The allegations of paragraph 201 are legal conclusions to which no response is required. To the extent that a response is required, Wells Fargo states that the referenced law and the document speak for themselves. Wells Fargo denies any and all allegations inconsistent therewith.

202. The Request was received by the Defendant on November 21, 2014 as evidenced by United States Postal Form 3811 attached hereto as Exhibit L.

Answer 202. Wells Fargo states that the document speaks for itself. Wells Fargo denies any and all allegations inconsistent therewith.

203 The Plaintiffs' Request for Information requested pursuant to TILA, the identity of the owner of the Plaintiffs' mortgage loan.

Answer 203. Wells Fargo states that the document speaks for itself. Wells Fargo denies any and all allegations inconsistent therewith.

204. Wells Fargo and John Doe, did not respond to Plaintiffs' request for the owner and holder of the Mortgage Note and the name of the servicer and Master servicer as required by 12 U.S.C. § 2605(e), thus violating 15 U.S.C. §1641(f) with respect to the Mortgage Loan.

Answer 204. The allegations of paragraph 204 are legal conclusions to which no response is required. To the extent that a response is required, Wells Fargo denies the allegations.

Any discovery of the Plaintiffs in regard to Count IV would similarly be

conducted for improper discovery purposes relating to the reasons for sending the

TILA request. The only question is whether the Plaintiffs, through their attorney sent a TILA request and whether Wells Fargo responded. Defendant failed to answer these allegations with any degree of specificity and was completely disingenuous in its answer, as in number 204 when it suggested that the allegation of failure to respond to the request for the identity of the owner of the mortgage loan in violation of TILA were legal conclusions to which no response was required. In fact this matter would appear to be ripe for Summary Judgment since the Defendant did not admit or deny the allegations, which are proven by Wells Fargo's failure to identify the owner.  Thus the deposition of the Plaintiffs can only be calculated to seek the privileged  information mentioned in its August 16, 2016 letter.

Finally Count V sought injunctive relief based on the legal issues raised by the endorsement of the Plaintiffs' mortgage note on a copy of the note sent to the Plaintiffs by Wells Fargo.  It is difficult to envision any discovery other than the mental impressions of the Plaintiffs' attorney relating to this count.  The August 16, 2016 letter indicates the real purpose of the planned deposition.

The Defendant has propounded interrogatories and requests for production, to which the Plaintiffs have responded. Included in this discovery were the following questions and to which answers were provided. A copy of the answers to interrogatories are attached to this Memorandum of Law as Exhibit F. In view of

the extensive answers provided to the Defendant, the Defendant merely seeks

information regarding the reason for the sending of RESPA and TILA requests to

Wells Fargo. Plaintiffs sought to make a good faith effort to resolve the discovery

dispute by suggesting the following to the Defendant in a letter dated September 2,

2016, attached to this Memorandum. In this letter, attached as Exhibit G, Plaintiffs

proposed the following:

My clients are agreeable to being deposed for issues relating to the damages that
they have incurred in terms of legal fees incurred and any issues not related to your
interest in obtaining any privileged communications or any work product regarding
the reasons for the Requests for Information.  You possess all the RESPA letters
that were sent. You know the date that these were received and you are aware of
your response. If you wish to stipulate to these facts as to the 14 letters, which are
the current basis of this litigation, this would certainly streamline the discovery.

What I do request is  a stipulation in which you will agree at the deposition,
not to ask my clients about anything that I discussed with them or any information
as mentioned in your letter:

related to the letters that you sent, authenticate the letters, identify what letters you
sent, identify when you sent them, find out whether responses were received by
you, what you did with the responses, why you continued to send the same
requests over and over again and to figure out why the information  that you
requested was necessary and relevant and not redundant. (or otherwise excusing
response under the applicable regulations.)

Please advise if you are agreeable to this proposal.

However the Defendant  did not agree to this proposal, thus indicating that

the purpose of the Deposition is merely designed to obtain privileged information.

This information sought consists of the communications between the Plaintiffs and

their counsel regarding the reasons for transmitting RESPA requests and implicates

both the attorney client and the work product privilege.  Wells Fargo has

possession of all the documents, which were  sent and received and will suffer no

hardship by not deposing the Plaintiffs regarding these topics as stated in the

August 16, 2016 letter. Neither the mental impressions of the Plaintiffs' attorney

nor their communications regarding the basis for the claims of litigation can be the

subject of discovery. Defendants are seeking to harass the Plaintiffs and their

attorney by this proposed discovery. Plaintiffs do not object to a deposition, with a

stipulation or Order , which precludes any questions concerning the topics

contained in the August 16, 2016 letter:

related to the letters that you sent, authenticate the letters, identify what letters you
sent, identify when you sent them, find out whether responses were received by
you, what you did with the responses, why you continued to send the same
requests over and over again and to figure out why the information  that you
requested was necessary and relevant and not redundant. (or otherwise excusing
response under the applicable regulations.)

Plaintiffs should not be required to attend a deposition and then be required

to object to each question regarding work product or attorney client privilege. Such

a deposition would not be in good faith.  If Defendant dispute the relevancy or

validity of any Requests for Information or questions the validity of its responses,

it can argue same before the Court.  However it instead seeks to depose the

Plaintiffs regarding this information. Thus Plaintiffs are also today filing a Motion

for a Protective Order regarding the privileged information. It is fully expected that

in view of the failure to answer the allegations of the complaint in other than a

nonresponsive manner and its assertions in the August 16, 2016 letter, that the

purpose of the Plaintiffs' deposition is to harass and burden the Plaintiffs with

questions solely related to privileged matters. Not only should attorney fees be

denied to Defendant, but the Court should consider fees to the Plaintiffs for having

to respond to the Motion to Compel and for filing a Motion for a Protective Order.

No factual information is being sought by Wells Fargo. Rather it wants to discover

from the Plaintiffs, legal strategy and information regarding the reasons for

sending RESPA and TILA requests.  Such discovery should not be permitted by

the Court as it intrudes on the sanctity of the attorney client relationship and seeks

indirectly the mental impressions and work product of their attorney.


                                              Respectfully Submitted,

September 12, 2016


                                              /s/ John B. Ennis
                                              JOHN B. ENNIS, ESQ., #2135
                                              1200 Reservoir Avenue
                                              Cranston, Rhode Island 02920
                                              (401) 943-9230
                                              jbelaw@aol.com

<u>CERTIFICATION</u>

I hereby certify that I emailed a copy of the within Memorandum of Law

to the following on the 12th day of September,  2016.


David E. Fialkow, Esq.
K & L Gates, LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111

Michael R. Hagopian, Esq.
Orlans Moran, PLLC
465 Waverly Oaks Road
Suite 401
Waltham, MA 02452

/s/ John B. Ennis